UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

TAXES OF PUERTO RICO, INC., et al.,

    Plaintiffs,

v.

TAXWORKS, INC., et al.,

    Defendants.

Civil No. 12-2059 (JAF)

**OPINION AND ORDER**

We must decide whether this court is an appropriate venue for the plaintiffs to bring their case in light of two venue selection clauses contained in contracts they entered into with the defendants.

**I.**

**Background**

TaxWorks, a Delaware corporation, provides accountants and professional tax preparers with software to assist in the preparation and electronic filing of individual tax returns. Taxes of Puerto Rico distributed TaxWorks' software to commercial clients in Puerto Rico, including the individual plaintiffs. During the 2012 tax season, the plaintiffs encountered a number of problems with TaxWorks' software. The individual plaintiffs, joined by Taxes of Puerto Rico, brought suit against TaxWorks. (Docket No. 1.) Both sides to the dispute seem to agree that there are claims here that need adjudication. What they cannot agree on is *where* those claims should be adjudicated.

There are two clauses at issue in understanding where this dispute would be best adjudicated. First, the software distributed by TaxWorks contains an End User License

Agreement that exclusively requires adjudication in Missouri. (Docket No. 11-2.) Second, the written distribution agreement between TaxWorks and Taxes of Puerto Rico contains a venue selection provision requiring all disputes be adjudicated in Massachusetts. (Docket No. 11-2.) TaxWorks moved to dismiss or, in the alternative, transfer the case to the United States District Court for the Western District of Missouri. (Docket No. 11.) We grant their motion for transfer.

## II.

## Legal Standard

### A. Motion to Dismiss Standard

A plaintiff's complaint will survive a motion to dismiss if it alleges sufficient facts to establish a plausible claim for relief. See Fed.R.Civ.P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of plaintiff. San Geronimo Caribe Project, Inc. v. Acevedo-Vila, 687 F.3d 465, 471 (1st Cir. 2012) (citation omitted).

Federal Rule of Civil Procedure 12(b)(3) permits a party to move to dismiss for improper venue before joining issue on any substantive point through the filing of a responsive pleading. Hohn v. United States, 524 U.S. 236, 248 (1998).

### B. Motion for Transfer of Venue

A district court may transfer a civil action to another district court or to any district that the parties consented to for the convenience of parties and witnesses and if doing so is in the interest of justice. 28 U.S.C. § 1404(a) We have broad discretion in granting or denying

a motion for transfer.  See Auto Europe, LLC v. Conn. Indem. Co., 321 F.3d 60, 64 (1st Cir.2003).

### III.

### Discussion

The plaintiffs argue that their End User License Agreement with the defendants should be treated as a contract of adhesion.  Because the venue selection provision at issue was contained in an End User License Agreement, the plaintiffs maintain it is invalid, allowing them to bring suit in the District of Puerto Rico.  We disagree with both contentions.

Because the plaintiffs had an opportunity to read the user agreement and because they explicitly communicated their assent to that agreement rather than return the software, the agreement is a binding contract and the plaintiffs are required to follow the venue selection clause contained in the agreement's terms.  The user agreement contained in the software provided at its outset, in all capital letters:

> YOU AGREE THAT THIS AGREEMENT IS ENFORCEABLE LIKE ANY WRITTEN NEGOTIATED AGREEMENT SIGNED BY YOU. *LICENSOR IS WILLING TO LICENSE THE SOFTWARE TO YOU ONLY ON THE CONDITION THAT YOU ACCEPT ALL OF THE TERMS OF THIS AGREEMENT.* YOU PROVIDE YOUR CONSENT TO THE TERMS AND CONDITIONS OF THIS AGREEMENT BY INSTALLING, LOADING OR OTHERWISE USING THE SOFTWARE. IF YOU DO NOT AGREE TO ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT, DO NOT USE THE SOFTWARE.

(Docket No. 11-3.)  TaxWorks designed their software to prevent installation unless the user affirmatively clicked "Accept & Install".  Here, each of the plaintiffs clicked "Accept &

Install," assenting to the terms contained in the user agreement, including a clear and unambiguous venue selection clause:

> Governing Law; Forum. This agreement shall be governed by the laws of Missouri, without regard to choice of law or conflicts of law provisions. Licensor and you agree that exclusive jurisdiction of any dispute arising out of, or relating to, this Agreement or any dispute arising out of, or relating to, the Software or services provided in connection therewith shall be in courts located in the county of Jackson.

(Docket No. 11-2.)

In other words, TaxWorks' unwillingness to proceed with the transaction unless the user agreement was accepted and the plaintiffs express acceptance of the terms of the user agreement could not have been clearer.

The Seventh Circuit's analysis in ProCD v. Zeidenberg, 86 F.3d 1447 (7th Cir. 1996) illustrates why clauses like this one are enforceable. In ProCD, the Seventh Circuit held that even where terms are found inside a box of software—so called "shrinkwrap" license agreements—consumers who use the software after an opportunity to read the terms and fail to reject them by returning the product, assent to the formation of a contract and are bound by the license agreement's terms. ProCD, 86 F.3d at 1451. The Seventh Circuit noted that "Money now, terms later" is a practical way to form contracts, especially where consumers increasingly purchase software over the Internet as a downloadable file. Id. In rebutting the claim that a "shrinkwrap" agreement is an unlawful contract of adhesion, the Seventh Circuit offered the example of several common transactions—like the purchase of a ticket for travel or entertainment—where the consumer makes the purchase prior to getting the detailed terms of the contract. ProCD, 86 F.3d at 1450-01.

If a "shrinkwrap" license agreement, where any assent on the part of the consumer is implicit, is valid, then it must logically follow that a "clickwrap" license agreement, where the assent is explicit, is valid. i.Lan Systems, Inc. v. Netscout Service Level Corp., 183 F.Supp.2d 328, 338 (D. Mass. 2002). Here, the plaintiffs explicitly accepted the "clickwrap", or user agreement, when they clicked on the prompt stating "Accept & Install."

The plaintiffs' counterarguments fail. They argue that other courts have invalidated user agreements as contracts of adhesion, and that we should do the same. To support this proposition the plaintiffs rely, largely, on Step-Saver Data Systems, Inc. v. Wyse Technology, 939 F.2d 91 (3rd Cir. 1991), and Arizona Cartridge Remanufacturers Association Inc. v. Lexmark International Inc., 421 F.3d 981 (9th Cir. 2005). The plaintiffs plainly misstate the holding of Arizona Cartridge Remanufacturers Association, Inc. That case does not say, as the plaintiffs claim, that a user agreement is valid only when it is printed on the outside of software packaging. Instead, the case holds that user agreements are legal because consumers can read and agree (or not) before proceeding to use a software program. The plaintiffs' reliance on Step-Saver is also of little help to our analysis: Step-Saver involved a "battle-of-the-forms" analysis in which the issue was not, as it is here, the enforceability *vel non* of a "click-wrap" agreement, but whether a prior purchase order or a later "shrink-wrap" agreement established the terms of the agreement between the parties. Additionally, it is worth noting that Step-Saver is a persuasive authority that is now over twenty years old, decided in a context that predated the advent of the iPhone and the widespread usage of the internet.

The majority of courts to have considered the enforceability of user agreements have concluded that those agreements are valid and enforceable. See, e.g., Spivey v. Adaptive

Marketing, LLC, 660 F.Supp.2d 940 (S.D.Ill. 2009); Meridian Project Systems, Inc. v. Hardin Const. Co., LLC, 426 F.Supp.2d 1101 (E.D.Cal. 2006); Lexmark Int'l, Inc. v. Static Control Components, Inc., 387 F.3d 522, 563 n. 10 (6th Cir. 2004); Mudd-Lyman Sales & Serv. Corp. v. United Parcel Service, Inc., 236 F.Supp.2d 907, 911-12 (N.D.Ill. 2002); I. Lan Sys., Inc. v. Netscout Serv. Level Corp., 183 F.Supp.2d 328 (D.Mass. 2002); Adobe Sys. Inc. v. Stargate Software Inc., 216 F.Supp.2d 1051 (N.D.Cal. 2002); Adobe Sys. Inc. v. One Stop Micro, Inc., 84 F.Supp.2d 1086 (N.D.Cal. 2000); Pollstar v. Gigmania, Ltd., 170 F.Supp.2d 974, 980-81 (E.D.Cal. 2000); Hill v. Gateway 2000, Inc., 105 F.3d 1147 (7th Cir. 1997); ProCD, 86 F.3d 1447 (7th Cir.1996). While some courts have characterized user agreements as contracts of adhesion and found them invalid, see, e.g., Step-Saver Data Systems, Inc., 939 F.2d 91 (3rd Cir. 1991); Vault Corp. v. Quaid Software Ltd., 847 F.2d 255 (5th Cir. 1988), they are the minority view and we decline to follow their disfavored precedent.

Next, the plaintiffs argue that the user agreement is unenforceable because it did not expressly provide that they could return the software for a refund if they did not agree to its terms. (Doc. No. 19 at 6.) Under Missouri's UCC § 2-206, a buyer accepts goods when, after an opportunity to inspect the goods, he fails to reject them. The same is true under Puerto Rico's commercial code, 10 L.P.R.A. § 1704, which provides a buyer a reasonable period of time to inspect the "purchase of unseen goods." Cf. ProCD, 83 F.3d at 1452-53. Thus, as a matter of law, the plaintiffs here had the right to return the software if they found the user agreement objectionable. None of them even attempted to do so.

The plaintiffs also argue that this user agreement is in direct conflict with the distribution agreement signed by Taxes of Puerto Rico. TaxWorks and Taxes Puerto Rico entered into a written Software License and Distribution Agreement in late 2011. (Docket

No. 11-2.)  Attached to the distribution agreement, and labeled as "Exhibit A", was a hard copy of the user agreement that would control Taxes of Puerto Rico's use of the software it licensed from TaxWorks.  Because the two agreements require disputes to be resolved in two different fora—Missouri for the user agreement and Massachusetts for the distribution agreement—the plaintiffs maintain that there is an irresolvable ambiguity that voids the selection provisions.  We disagree.

The plaintiffs argue that because the venue selection provision in the main body of the distribution agreement provided for venue in Massachusetts and the venue selection provision in the attached user agreement provided for venue in Missouri, the contract as a whole is ambiguous and the venue selection clauses are void.  Moreover, the plaintiffs also point to the fact that both agreements contain clauses, Section 19 of the distribution agreement and Section 10(B) of the user agreement, superseding any and all prior agreements.  According to the plaintiffs, these clauses, coupled with the different fora selected in each agreement, creates a clear and irresolvable contradiction.

Tacking at the problem from a slightly different angle than that chosen by the plaintiffs, it seems to us that the operative issue here is determining what, if any, disagreement exists between the distribution agreement and the user agreement.  The venue selection provision in the main body of the distribution agreement applies to actions arising out of or relating to the sale and distribution of the software generally.  Conversely, the venue selection provision contained in the user agreement, attached to the distribution agreement as Exhibit A, applies specifically for actions arising out of the use and performance of the software.  It is a common rule of statutory construction that the specific provision should prevail over the general.  Edmonds v. United States, 520 U.S. 651, 657

(1997) ("Ordinarily, where a specific provision conflicts with a general one, the specific governs."). In other words, the distribution agreement's generality makes way for the specificity of the user agreement which was attached to the distribution agreement as a controlling exhibit. And here, the underlying merits dispute is specifically about the functioning of the software—not more generally about the supply or distribution of the product. Moreover, any purported confusion on this matter should have been resolved by the first page of the distribution agreement, where it states: "In the case of any conflict between the terms in the body of this Agreement and the terms of any Exhibit, the terms of the Exhibit shall control." (Docket No. 11-2 at 1.) Accordingly, the user agreement, including its Missouri venue selection provision, applies in this case.

The remaining arguments offered by the plaintiffs are predicated on the inconvenience of litigating in Missouri. The plaintiffs argue that an appropriate balancing of factors—including the convenience of the parties and witnesses; the availability of documents and ease of access to sources of proof; the need to keep litigation consolidated—makes Puerto Rico the proper forum to litigate the cause of action. Fash Obalco, Inc. V. M.K.M. Industries, Inc., 888 F.Supp. 344, 348 (D.P.R. 1995) (citations omitted).

We will not consider the plaintiffs' private interests, however. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of litigation." Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist., 134 S.Ct 568, 581-84 (2013). Instead, we look to public interests, not private ones. Id. at 583. And where the parties, as here, agreed to select a forum in advance of any dispute, the public interest favors enforcing that agreement. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22 at

31 (1988); see also Lambert v. Kysar, 983 F.2d 1110, 1117 (1st Cir. 1993). As with any contract, courts respect the will of the parties to bargain in advance. The mere fact that a venue may be inconvenient to the plaintiffs does not make the venue selection clause unreasonable, especially since the possibility of inconvenience was known and contemplated at the time of executing the agreements. See In re Mercurio 402 F.3d 62, 66 (1st Cir. 2005) (quoting Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991)); see also Royal Bed & Spring Co. v. Famossul Industria, 906 F.2d 45, 49 (1st Cir.1990). Thus, "[w]hile a plaintiff's choice of forum is ordinarily given deference by the courts, this deference is inappropriate when the parties have entered into a contract providing for a different forum." Outek Caribbean Distrib., Inc. v. Echo, Inc., 206 F.Supp.2d 263, 266 (D.P.R. 2002) (citation omitted). Here, the parties bargained to adjudicate future software disputes in Missouri, and that is what we will require.

We find that a transfer of venue to the United States District Court for the Western District of Missouri is appropriate. The parties clearly and unambiguously intended that any disputes arising under the user and distribution agreements be settled in the Western District Court of Missouri. The plaintiffs have not alleged any fraud or overreaching by the defendants in the negotiations leading up to or in the signing of the contract. We find, then, that the parties freely submitted themselves to the jurisdiction of the District Court of Missouri. Our decision is limited to the transfer pursuant to section 1404(a). The United States District Court for the Western District of Missouri shall determine the merits of the case.

## IV.

## **Conclusion**

**THEREFORE**, the defendant's motion for transfer to the United States District Court for the Western District of Missouri, (Docket No. 10), is **GRANTED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 20th day of March, 2013.

                                                                 S/José Antonio Fusté
                                                                 JOSE ANTONIO FUSTE
                                                                 U. S. DISTRICT JUDGE